STATE OF CONNECTICUT *v.* JOSEPH SORBO

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued November 10, 1977—decision released February 14, 1978

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *James D. Cosgrove,* chief public defender, and *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Edward J. Mullarkey,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant was found guilty by a jury of having committed the offenses of burglary in the third degree in violation of § 53a-103 of the General Statutes and of larceny in the first degree in violation of § 53a-122. From the judgment rendered he has appealed.

The jury could have found that a burglary occurred at the Whalley Avenue Pharmacy in the early morning of March 23, 1974. Entry was gained through a hole that was cut in the roof and ceiling. Drugs, both controlled and noncontrolled, valued at over $2000 were taken in addition to $1986 in cash and various other items.

In the present case, the state called as witnesses Aldo Guida, Jr., Philip Corso, Joseph Lieto and Kevin Burns, all of whom previously had pleaded guilty to one or more felony charges stemming from this break-in. Guida and Corso implicated the defendant in the crime. Burns testified that the defendant was not present that night. Lieto asserted his fifth amendment privilege against self-incrimination and refused to testify when called to the stand. The defendant did not testify.

The defendant claims error in the admission of testimony that unidentified threats were made to a witness for the state. Philip Corso, a state's witness who implicated the defendant, testified on direct examination that he had pleaded guilty to a criminal charge in connection with the present

offense and to another unrelated charge. On cross-examination, in an effort to impeach Corso, the defense questioned the witness as to inconsistencies between his written statement to the police and his trial testimony. Specifically, the defense sought to elicit statements pertaining to his written statement that it had been freely given without fear, threats, or promises. The witness conceded that he had, at the time of signing the statement, expectations of leniency, that certain charges against him were never prosecuted, and, that he had an interest in implicating others. On redirect examination, in an attempt to rehabilitate the witness, the state inquired of Corso whether anyone had threatened him about his testimony. The witness responded, "No. I got a phone call and stuff saying a bunch of different things, not about testifying, but it's because I testified, you know, made a statement. I don't know from whom." The defendant immediately moved to strike this response. The state claimed the answer was responsive. The jury were excused. The state made an offer of proof, Corso testifying upon inquiry that he had received threats of bodily injury on the telephone because he had given a statement, and that his windshield had been broken. He could not identify the caller nor did he know who was responsible for the act. The defense counsel, in further questioning Corso, established that the witness had twice testified at bind-over hearings in connection with the Whalley Avenue Pharmacy offense implicating Lieto, Burns and the defendant. The court overruled the defendant's motion to strike. Exception was taken. The jury were brought back and the state resumed its examination, asking Corso if he knew who called him, Corso replying in the negative. He was asked

if he received such phone calls on one or more occasions, and Corso replied, "About four." The defense counsel cross-examined Corso on these phone calls. He again stated he didn't know who the calls were from and that Lieto and Burns went to prison as a result of his testimony.

Although no Connecticut cases are directly on point, it is evident that the weight of authority favors the admission of evidence of threats made against a witness in a criminal prosecution when such threats were made with the defendant's knowledge, consent, or authorization. See, annot., 62 A.L.R. 136. Evidence of this nature is admissible either on the theory that such conduct of the accused is inconsistent with claims of innocence; *State* v. *Hill,* 47 N.J. 490, 500–501, 221 A.2d 725; or, on the theory that such conduct exhibits a consciousness of guilt. *People* v. *Blau,* 140 Cal. App. 2d 193, 294 P.2d 1047, cert. denied, 352 U.S. 837, 77 S. Ct. 58, 1 L. Ed. 2d 55; *People* v. *Gambony,* 402 Ill. 74, 83 N.E.2d 321. Where, however, there is no evidence to connect the defendant with such threats, they are not admissible against him. Annot., 62 A.L.R. 136–37; 29 Am. Jur. 2d, Evidence, § 293; 1 Wharton, Criminal Evidence (13th Ed.) § 217; McCormick, Evidence (2d Ed.) § 273.

It is evident that when Corso first mentioned the fact that there were threats against him, it was not anticipated by the state that he would so testify. However, the state persisted in urging the court not to strike this evidence. When the jury returned to the courtroom, the state pursued the subject and obtained further evidence that Corso was threatened "about four" times. The court's refusal to strike the witness' testimony as to these threats, in the

absence of any evidence connecting the defendant to them, was error.

Although the evidentiary error was not of a constitutional dimension which would place the burden on the state to prove the error harmless beyond a reasonable doubt; *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, rehearing denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241; and *Aillon* v. *State,* 168 Conn. 541, 547–48, 363 A.2d 49; the defendant has sustained his burden of establishing the error to be harmful. *Aillon* v. *State,* supra, 547; *State* v. *L'Heureux,* 166 Conn. 312, 323, 348 A.2d 578; *State* v. *Vennard,* 159 Conn. 385, 393, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625.

The evidence as shown by the briefs does not indicate that it was overwhelmingly against the defendant. Two self-confessed felons, participants in the burglary, who were given substantial consideration in the disposition of their cases, implicated the defendant. On the other hand, another witness who was also involved in the break-in and who was serving time as a result, testified that the defendant was not present when the incident occurred. While the testimony in question strengthened the credibility of the witness—a witness who implicated the defendant—it also served to provide a substantial basis from which an inference, unfavorable to the defendant, could be drawn. Evidence of threats against a witness "may be considered as tending to corroborate the proponent's case generally, and as tending to discredit the adversary's case generally" McCormick, Evidence (2d Ed.) § 273. Under these circumstances, the court's error, in allowing this testimony to stand, prejudiced the defendant and cannot now be said to be harmless.

In view of the fact that this error requires a new trial, the other assignments of error need not be discussed.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.