STATE OF CONNECTICUT *v.* WILLIAM PICKERING

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued December 13, 1979—decision released March 4, 1980

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Eugene J. Callahan,* assistant state's attorney, for the appellant (state).

*Ralph L. Palmesi,* for the appellee (defendant).

COTTER, C. J. The issue presented to us on this appeal is whether General Statutes § 53-21 as applied to the facts of this case is so vague and indefinite as to violate the due process provisions of article first, § 8 of the state constitution and the fourteenth amendment of the federal constitution.[1]

---

[1] The due process provisions of the federal and Connecticut constitutions have a common meaning so as to permit us to treat the questions on appeal as a single issue. *Miller* v. *Heffernan,* 173

The constitutionality of this statute has not been raised before in this court. As it pertains to this appeal the statute provides: "Any person who. . . does any act likely to impair the . . . morals of any such child [under the age of sixteen years], shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."[2]

The defendant was tried to a jury on a three count information charging two counts of conduct likely to impair the morals of a minor in violation of General Statutes § 53-21 and one count of sexual assault in the second degree in violation of General Statutes § 53a-71. The first count alleging a violation of § 53-21 involved conduct which occurred between February, 1975, and September, 1975, at the home of the victim's parents. The second count under § 53-21 concerned acts which took place between October, 1975, and October, 1976, at the residence of the defendant.

The jury found the defendant guilty of both counts of violating § 53-21, but were unable to reach a verdict on the sexual assault count which resulted in a declaration of a mistrial by the trial court as to that count. Immediately after the rendition of the verdict, the defendant filed numerous motions

Conn. 506, 516, 378 A.2d 572; *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 170 Conn. 155, 157, 365 A.2d 393; *State* v. *Kyles,* 169 Conn. 438, 442, 363 A.2d 97.

[2] General Statutes § 53-21 reads in full: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

all challenging the constitutionality of § 53-21; the trial court granted the defendant's motions in arrest of judgment and to dismiss the information on the grounds that § 53-21 is unconstitutionally vague as applied to the facts of this case. The state requested and was granted permission to appeal the trial court's decision.

I

As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. *United States* v. *Powell,* 423 U.S. 87, 92, 96 S. Ct. 316, 46 L. Ed. 2d 228; *United States* v. *Mazurie,* 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706; *United States* v. *National Dairy Products Corporation,* 372 U.S. 29, 32–33, 83 S. Ct. 594, 9 L. Ed. 2d 561; *United States* v. *Raines,* 362 U.S. 17, 21, 80 S. Ct. 519, 4 L. Ed. 2d 524. To do otherwise, absent the appearance that the statute in question intrudes on fundamental constitutional guarantees, particularly first amendment freedoms,[3] would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of complex legislation. *United States* v. *Raines,* supra; *Barrows* v. *Jackson,* 346 U.S. 249,

---

[3] In the cases where such first amendment guarantees as free speech and assembly are at issue, an indefinite statute may impermissibly inhibit the exercise of those freedoms. "Those . . . sensitive to the perils posed by . . . indefinite language, avoid the risk . . . only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited." *Baggett* v. *Bullitt,* 377 U.S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377. See also *Hynes* v. *Mayor of Oradell,* 425 U.S. 610, 620, 96 S. Ct. 1755, 48 L. Ed. 2d 243; *Lewis* v. *New Orleans,* 415 U.S. 130, 94 S. Ct. 970, 39 L. Ed. 2d 214; *United States* v. *National Dairy Products Corporation,* 372 U.S. 29, 36, 83 S. Ct. 594, 9 L. Ed. 2d 561; *Winters*

256, 73 S. Ct. 1031, 97 L. Ed. 1586. The delicate power of deciding that legislation is unconstitutional would be exercised by adjudicating the rights of parties not before the court. Hence, that a statutory provision may be of questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue. *United States* v. *Petrillo*, 332 U.S. 1, 7, 67 S. Ct. 1538, 91 L. Ed. 1877.

From the evidence presented concerning the first count in the indictment charging a violation of § 53-21 the jury could have found: The victim, the defendant's daughter, was born on April 12, 1963. On several Saturday mornings between February and April, 1975, while the defendant was living in the same apartment with his daughter, he sexually molested her in his room at a time when the victim's mother habitually went shopping. We do not think it appropriate in this opinion to delineate in detail the full extent of the defendant's bodily contact with and lewd touching of his daughter which was described with specificity by her to the jury. From April of 1975 until the defendant moved from the address named in the first count of the information in August of 1975, the defendant repeatedly came

v. *New York*, 333 U.S. 507, 509, 68 S. Ct. 665, 92 L. Ed. 840; note, "The Void-For-Vagueness Doctrine in the Supreme Court," 109 U. Pa. L. Rev. 67, 80 (1960). Due to this "chilling effect" which vague statutes can exert on first amendment liberties, when those freedoms are at stake, the statute's constitutionality is tested for vagueness on its face. *Smith* v. *Goguen*, 415 U.S. 566, 573, 94 S. Ct. 1242, 39 L. Ed. 2d 605; *Grayned* v. *City of Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222; *Winters* v. *New York*, supra. Thus, in a first amendment context, a defendant may challenge the validity of a statute's application to marginal situations even though his own conduct may clearly fall within the statute's proscriptions. See note, supra, 109 U. Pa. L. Rev. 67, 97.

into the victim's room when no one else was up and about and attempted to have sexual intercourse with the victim.

The evidence presented on the second count charging a violation of § 53-21 concerned events after the defendant moved from the address named in the first count of the information to a dwelling named in the second count of the information in September of 1975. The victim tried to avoid going to her father's and when she did go she tried to bring someone along so that her father's actions might be thwarted. Nonetheless, on some occasions at her father's while her younger brother was left watching television downstairs, the victim was asked upstairs and the defendant would attempt to have sexual intercourse with her. In October of 1975, the defendant took a Polaroid picture of the victim naked in his upstairs bedroom. Also on about eight or nine occasions over a period of four months the defendant sketched the victim nude in his apartment after initially stating he would pay her $5 for each picture. Between July, 1976 and October 26, 1976, the defendant on several occasions sexually abused the victim. On October 26, 1976, the defendant took numerous lurid pictures of the victim while she was naked and again attempted sexual intercourse. The victim told her mother of her father's actions the next day.

## II

A long line of United States Supreme Court decisions have established a basic principle to be considered when a statute is under attack as void for vagueness. It may be described as a fair warning principle which mandates that as a matter of due process a penal statute must be sufficiently definite

to enable a person to know what conduct he must avoid. "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322. Accord, *Hynes* v. *Mayor of Oradell,* 425 U.S. 610, 620, 96 S. Ct. 1755, 48 L. Ed. 2d 243; *Rose* v. *Locke,* 423 U.S. 48, 49, 96 S Ct. 243, 46 L. Ed. 2d 185; *United States* v. *Mazurie,* 419 U.S. 544, 553, 95 S. Ct. 710, 42 L. Ed. 2d 706; *Smith* v. *Goguen,* 415 U.S. 566, 572 n.8, 94 S. Ct. 1242, 39 L. Ed. 2d 605; *United States* v. *Harriss,* 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989; *Winters* v. *New York,* 333 U.S. 507, 515–16, 68 S. Ct. 665, 92 L. Ed. 840; *Lanzetta* v. *New Jersey,* 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888. See generally note, "The Void-For-Vagueness Doctrine in the Supreme Court," 109 U. Pa. L. Rev. 67 (1960); comment, "Recent Supreme Court Developments of the Vagueness Doctrine," 7 Conn. L. Rev. 94 (1974). See also *Stolberg* v. *Caldwell,* 175 Conn. 586, 610–11, 402 A.2d 763; *State* v. *Chetcuti,* 173 Conn. 165, 167, 377 A.2d 263; *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68.

This notion of fair warning is intended to ensure that vague laws do not become a trap for the innocent. *Hynes* v. *Mayor of Oradell,* supra, 622; *Grayned* v. *City of Rockford,* 408 U.S. 104, 108,

92 S. Ct. 2294, 33 L. Ed. 2d 222; *Papachristou* v. *City of Jacksonville,* 405 U.S. 156, 162–63, 92 S. Ct. 839, 31 L. Ed. 2d 110. As Mr. Justice Holmes explained in *McBoyle* v. *United States,* 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear."

It has been recently stated that "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose* v. *Locke,* supra, 50. Thus, a penal statute may survive a vagueness attack solely upon a consideration of whether it provides fair warning.[4] *United States*

---

[4] United States Supreme Court opinions have indicated that a second principle of the void-for-vagueness doctrine is also considered—namely, whether a statute provides adequate standards for its enforcement and administration by police, prosecutors, judges and jury—when first amendment guarantees are explicitly or potentially at issue; e.g., *Grayned* v. *City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222; *Coates* v. *Cincinnati,* 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214; *Interstate Circuit, Inc.* v. *Dallas,* 390 U.S. 676, 684–85, 88 S. Ct. 1298, 20 L. Ed. 2d 225; *Ashton* v. *Kentucky,* 384 U.S. 195, 200, 86 S. Ct. 1407, 16 L. Ed. 2d 469; or when the result is the striking down of a provision as void for vagueness. *Smith* v. *Goguen,* 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605; *Papachristou* v. *City of Jacksonville,* 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110.

When the statute threatens such a fundamental right as freedom of speech under the first amendment, the void-for-vagueness doctrine "demands a greater degree of specificity than in other contexts." *Smith* v. *Goguen,* supra, 573. See also *Hynes* v. *Mayor of Oradell,* 425 U.S. 610, 620, 96 S. Ct. 1755, 48 L. Ed. 2d 243; *Smith* v. *California,* 361 U.S. 147, 151, 80 S. Ct. 215, 4 L. Ed. 2d 205, reh. denied, 361 U.S. 950, 80 S. Ct. 399, 4 L. Ed. 2d 383. This requirement of

v. *Powell,* supra; *Rose* v. *Locke,* supra; *Colten* v.
*Kentucky,* 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d
584; *State* v. *Chetcuti,* 173 Conn. 165, 166–67, 377
A.2d 263. Since we decide that an innocent defend-
ant has not been denied fair warning, the words of
General Statutes § 53-21 at issue avoid unconstitu-
tional vagueness.

## III

If the meaning of a statute can be fairly ascer-
tained a statute will not be void for vagueness since
"[m]any statutes will have some inherent vague-
ness, for '[i]n most English words and phrases
there lurk uncertainties.' *Robinson* v. *United
States,* 324 U.S. 282, 286, 54 S. Ct. 666, 89 L. Ed.
944." *Rose* v. *Locke,* supra, 49–50. References to
judicial opinions involving the statute, the common
law, legal dictionaries, or treatises may be necessary
to ascertain a statute's meaning to determine if it

more specificity involves a testing of a statute's validity on its face;
see footnote 3 supra; as well as an examination of whether reason-
ably definite standards are provided by a statute for its application.

Relatively recent opinions of the United States Supreme Court
such as *Smith* v. *Goguen,* supra (where the majority eschews a
potential first amendment issue, see concurring opinion of White, J.,
at 583), and *Papachristou* v. *City of Jacksonville,* supra, suggest
that a two part inquiry is indicated if there is an initial determina-
tion that a statute does not provide fair warning. But see *Lanzetta*
v. *New Jersey,* 306 U.S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (striking
down statute solely on principle of lack of fair warning). This
further inquiry in cases where fair warning is not found would
comport with the well-settled doctrine of the Supreme Court and
this court that a strong presumption of constitutionality attaches
to acts of a legislature. See, e.g., *United States* v. *National Dairy
Products Corporation,* 372 U.S. 29, 32, 83 S. Ct. 594, 9 L. Ed. 2d 561;
*Jordan* v. *DeGeorge,* 341 U.S. 223, 231, 71 S. Ct. 703, 95 L. Ed.
886, reh. denied, 341 U.S. 956, 71 S. Ct. 1011, 95 L. Ed. 1377;
*United States* v. *Petrillo,* 332 U.S. 1, 7, 67 S. Ct. 1538, 91 L. Ed.
1877; *Eielson* v. *Parker,* 179 Conn. 552, 557–58, 427 A.2d 814; *State*
v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99; *State* v. *Warren,* 169
Conn. 207, 217, 363 A.2d 91.

gives fair warning. Id. Thus, prior decisions of this court which delineate a statute's reach can constitute sufficient notice of the acts prohibited to render the statute constitutional as applied to the particular facts of a case. See *Colten* v. *Kentucky,* supra; *Musser* v. *Utah,* 333 U.S. 95, 97, 68 S. Ct. 397, 92 L. Ed. 562. See also *Wainwright* v. *Stone,* 414 U.S. 21, 23, 94 S. Ct. 190, 38 L. Ed. 2d 179. ("When a state statute has been construed to forbid identifiable conduct so that 'interpretation by [the state court] puts these words in the statute as definitely as if it had been so amended by the legislature [*Winters* v. *New York,* 333 U.S. 507, 514, 68 S. Ct. 665, 92 L. Ed. 840],' claims of impermissible vagueness must be judged in that light." In *Wainwright* the Florida court had previously held that the acts committed were covered by the statute which proscribed "crime against nature.")

In the present case, the meaning of the words "acts likely to impair the . . . morals of any child [under the age of sixteen years]" have been repeatedly and explicitly elucidated through several opinions of this court. In *State* v. *Coulombe,* 143 Conn. 604, 124 A.2d 518 (1956), the offense involved the touching of the private parts of a nine year old girl. The defendant had " 'pulled up [her] dress and put down [her] pants . . . and then put his hands in [her] pants . . . [b]etween her' " and he had "touched her flesh and moved his hands back and forth for a short while, hurting her." Id., 605–606. In *State* v. *Anderson,* 152 Conn. 196, 197, 205 A.2d 488 (1964), the defendant performed fellatio on the victim, a ten year old boy, who cried when subjected to this act. In a number of other cases involving the statutory words at issue in § 53-21, this court's opinions disclose that the conduct in

question concerned indecent acts perpetrated on the victim. See *State* v. *Silver,* 139 Conn. 234, 237, 93 A.2d 154 (1952); *State* v. *Blake,* 157 Conn. 99, 100, 249 A.2d 232 (1968); *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971). Furthermore, in *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963), this court defined the parameters of the risk of injury statute after discussing its history and derivation: "The apparent legislative purpose in combining the two parts in a single section was to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare; see *State* v. *Smith,* 149 Conn. 487, 181 A.2d 446; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. See *State* v. *Coulombe,* 143 Conn. 604, 124 A.2d 518; *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154."

In light of this extensive judicial gloss on the words "act likely to impair the morals of any child [under the age of sixteen years]," if a person were to consult the statute and the cases, they would give fair warning that the acts the defendant perpetrated in relation to the first count were proscribed at the time he committed those acts. This court's opinions pursuant to § 53-21 make it clear that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of that statute. The conduct of the defendant during the time period encompassed by the first count involved, at the very least, deliberate touching of this nature. This is not a situation where the state is holding an individual "criminally respon-

sible for conduct he could not reasonably understand to be proscribed." *United States* v. *Harriss,* supra, 617. On the contrary, this is an instance where the statute "as authoritatively construed [applies] without question to certain activities." *Smith* v. *Goguen,* supra, 578. The defendant's "behavior rendered him a hard-core violator as to whom the statute was not vague, whatever its implications for those engaged in different conduct." Id., 577. Section 53-21 has been given a core by the opinions of this court which serve as an authoritative judicial gloss on the provision. See Freund, "The Supreme Court and Civil Liberties," 4 Vand. L. Rev. 533, 541 (1951).

The conduct of the defendant during the time period covered by the second charge also included a number of acts of deliberate touching identical in nature to those involved in the first count. Thus, this court need not decide at this point whether § 53-21 and the cases decided under it would give adequate warning that the taking of lurid naked photographs and naked sketches (with the offer of payment for each) of a twelve or thirteen year old child alone was proscribed by § 53-21 at the time those acts were committed.[5] The taking of the photographs and the sketches are, in this instance, only additional, superfluous facts which were unnecessary to the jury's reaching a verdict of guilty on the second count in light of their guilty verdict on

[5] It is noteworthy, however, that two months after the last of the acts in question in the second count took place, this court issued its opinion in *State* v. *Hauck,* 172 Conn. 140, 374 A.2d 150. In *Hauck,* supra, this court upheld a judgment of guilty of two counts of injury or risk of injury to a minor child in violation of § 53-21; the conduct primarily involved in the case was the defendant's taking of nude photographs of a student after promising her a "C" grade in science.

the first count. The acts of deliberate touching involved in the second count were a sufficient basis for the jury to conclude the defendant was guilty of the second count and this court need not address the defendant's illogical contentions that the defendant may have been found guilty in the second count on a possibly unconstitutional ground (the taking of sketches and photographs) when a constitutional ground (the sexual acts of touching) existed that the jury had already necessarily relied on in reaching a verdict on the first count. Thus, as to the second count charged, the defendant is also, in the words of *Smith* v. *Goguen*, supra, 577, a "hard-core violator" of § 53-21, and as such the statute may constitutionally be applied to him.

There is error, the judgment of the trial court is set aside, the jury verdict is reinstated, and the case is remanded with direction to render judgment that the defendant is guilty and that sentence be imposed.

In this opinion the other judges concurred.